**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| LAURA GILLEAD,           ) | |
|          ) | |
|      Plaintiff,     ) | |
|        ) | |
|      v.      ) | Civil No. 15-48 |
|        ) | |
| UNITED STATES OF AMERICA    ) | |
| (TRANSPORTATION SECURITY   ) | |
| ADMINISTRATION); VIRGIN ISLANDS ) | |
| DEPARTMENT OF LABOR;     ) | |
|        ) | |
|     Defendants.    ) | |
|        ) | |

APPEARANCES:

**Pedro Williams, Esq.**
Law Office of Pedro K. Williams
St. Thomas, VI
    *For Laura Gillead*,

**Gretchen Shappert, United States Attorney**
**Joycelyn Hewlett, AUSA**
**Sansara Adella Cannon, AUSA**
United States Attorney's Office
St. Thomas, VI
    *For the United States of America (Transportation Security Administration),*

**Claude Walker, Attorney General**
**Su-Layne Walker, AAG**
Virgin Islands Department of Justice
St. Thomas, VI
    *For the Virgin Islands Department of Labor.*

## ORDER

GÓMEZ, J.

    Before the Court are: (1) the petition of Laura Gillead; (2) the motion of the Virgin Islands Department of Labor to remand this case for lack of subject-matter jurisdiction; and

(3) the motion of the United States to dismiss the petition for failure to state a claim and for failure to prosecute.

## I.   FACTUAL AND PROCEDURAL HISTORY

On September 15, 2002, the Transportation Security Agency (the "TSA" or the "United States"), a federal agency, hired Laura Gillead ("Gillead") as a transportation security officer. She was stationed at Cyril E. King Airport in St. Thomas, U.S. Virgin Islands. On December 1, 2014, Gillead's position with the TSA was terminated due to alleged insubordination and misbehavior in front of passengers.

On December 7, 2014, Gillead filed a claim for unemployment benefits. On February 17, 2015, an adjudicator determined that Gillead was disqualified from receiving benefits under the Virgin Islands Employment Security Law.

Gillead appealed that determination to an administrative law judge in the Virgin Islands Employment Security Agency. The administrative law judge held a hearing on Gillead's appeal on March 17, 2015. Gillead and a TSA representative appeared at that hearing. In a March 20, 2015, opinion, the administrative law judge affirmed the denial of benefits.

On April 20, 2015, Gillead filed a "Petition for Writ of Review" in the Superior Court of the Virgin Islands. In that petition, Gillead named the Virgin Islands Department of Labor

(the "Virgin Islands") and the TSA as respondents. In her

petition, Gillead contends that she did not engage in

misconduct; that the administrative law judge's conclusions were

not supported by substantial evidence; that the administrative

law judge exceeded his authority; and that she was denied due

process during the underlying proceedings. As a remedy, Gillead

seeks "a writ of review . . . ordering unemployment benefits, .

. . [pending the outcome] of this proceeding and such other

relief this court deems reasonable, including waiver of posting

bond." ECF No. 1-1 at 4.

On June 5, 2015, the United States removed the matter to

this Court. On January 24, 2017, the United States then filed a

motion to dismiss the claim against it for failure to state a

claim and for failure to prosecute.

On March 26, 2018, the Virgin Islands filed a motion to

remand this matter for lack of subject-matter jurisdiction.

On July 16, 2018, the Court ordered the parties to file

briefs addressing: "(1) whether the Secretary of Labor and the

U.S. Virgin Islands have entered into an agreement that

satisfies the provisions of 5 U.S.C. § 8502; and (2) if such an

agreement has been reached, whether the Court may exercise

jurisdiction over this matter." ECF No. 30, at 8. The United

States and the Virgin Islands filed responsive briefs,

indicating that such an agreement exists. Gillead asserted that

no such agreement exists.

The United States subsequently provided two documents to

the Court: a 1954 agreement and a 1958 amendment to that

agreement. The United States also provided an affidavit from Gay

Gilbert ("Gilbert"), the Administrator of the Office of

Unemployment Insurance of the U.S. Department of Labor,

Employment and Training Administration.  In Gilbert's affidavit,

he stated that: (1) the 1954 agreement is an agreement made in

accordance with 5 U.S.C. § 8502 between the Virgin Islands

Department of Labor and the United States Secretary of Labor;

(2) the only amendment to the 1954 agreement is the 1958

amendment; and (3) the 1954 agreement, as amended, remains in

effect. *See Affidavit of Gay Gilbert*, ECF No. 39-1, at 1-2.

On August 8, 2018, the Court held an evidentiary hearing to

address the Court's subject matter jurisdiction over this case.

Following that hearing, the Court ordered the parties to:

> file briefs, with citation to controlling
> authority, addressing: (1) what law, if any,
> supports the continued validity of the 1954
> agreement docketed at ECF No. 39-1; (2) whether
> the United States Virgin Islands and the United
> States are permitted to, by their conduct, form a
> new agreement or amend the 1954 agreement in such
> a manner that there is an agreement between the
> United States Virgin Islands and the United States
> that satisfies the requirements of 5 U.S.C. § 8502
> and any other relevant requirements; and (3) if an

> agreement or amendment by conduct is permitted,
> what record evidence supports the conclusion that
> such an agreement has been reached or that such an
> amendment has occurred.

ECF No. 43. The parties have filed responsive briefs.

## II.   DISCUSSION

### 1. 28 U.S.C. 1447(c)

A court will remand a removed case "if at any time before final judgment, it appears that the district court lacked subject matter jurisdiction." 28 U.S.C. 1447(c). Removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand. *Abels v. State Farm Fire & Casualty Co.,* 770 F.2d 26, 29 (3d Cir.1985). The removing party has the burden of establishing federal jurisdiction. See *Fuerzig,* 174 F.Supp.2d at 353 (quoting *Gateway 2000, Inc. v. Cyrix Corp.,* 942 F.Supp. 985, 989 (D.N.J.1996)("When considering a motion to remand, the removing party has the burden of establishing the propriety of the removal.").

### 2. Federal Rule of Civil Procedure 12(b)(6)

When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir.

2010). The Court must accept as true all of the factual
allegations contained in the complaint and draw all reasonable
inferences in favor of the non-moving party. *Alston v. Parker*,
363 F.3d 229, 233 (3d Cir. 2004).

A complaint may be dismissed for "failure to state a claim
upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).
"[A] plaintiff's obligation to provide the grounds of his
entitlement to relief requires more than labels and conclusions,
and a formulaic recitation of the elements of a cause of action
will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555
(2007).

The Supreme Court in *Bell Atlantic v. Twombly*, 550 U.S. 544
(2007), set forth the "plausibility" standard for overcoming a
motion to dismiss and refined this approach in *Ashcroft v.
Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires
the complaint to allege "enough facts to state a claim to relief
that is plausible on its face." *Twombly*, 550 U.S. at 570. A
complaint satisfies the plausibility standard when the factual
pleadings "allow [ ] the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged." *Iqbal*,
556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard
requires showing "more than a sheer possibility that a defendant
has acted unlawfully." *Id.* A complaint which pleads facts

"'merely consistent with' a defendant's liability . . . 'stops

short of the line between possibility and plausibility of

"entitlement of relief."'" *Id.* (citing *Twombly*, 550 U.S. at

557).

To determine the sufficiency of a complaint under the

plausibility standard, the Court must take the following three

steps:

> First, the court must "tak[e] note of the elements
> a plaintiff must plead to state a claim." Second,
> the court should identify allegations that,
> "because they are no more than conclusions, are
> not entitled to the assumption of truth." Finally,
> "where there are well-pleaded factual allegations,
> a court should assume their veracity and then
> determine whether they plausibly give rise to an
> entitlement for relief.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)

(quoting *Iqbal*, 556 U.S. at 674, 679).

### 3. Federal Rule of Civil Procedure 41

Federal Rule of Civil Procedure 41 provides that, "[i]f the

plaintiff fails to prosecute . . . a defendant may move to

dismiss the action or any claim against it." Fed. R. Civ .P.

41(b). A court's authority to dismiss claims under Rule 41(b) is

based on the "'inherent power' [of the court] . . . to manage

[its] own affairs so as to achieve the orderly and expeditious

disposition of cases." *Link v. Wabash Railroad Co.,* 370 U.S.

626, 630-31 (1962) (citation omitted). "Unless the dismissal

order states otherwise, a dismissal under this [section] . . .

operates as an adjudication on the merits." Fed. R. Civ. P.

41(b). "The procedural history of each case must be examined" in

order to determine whether a motion under Rule 41(b) should be

granted. *Marshall v. Sielaff,* 492 F.2d 917, 918 (3d Cir.1974).

### III. ANALYSIS

#### A. Remand

If the Court lacks subject matter jurisdiction over a case

removed from the local court to this Court, the Court must

remand the matter to the local court. *See* 28 U.S.C. 1447(c). Two

subject matter jurisdiction issues are before the Court. First,

the Court has *sua sponte* raised the issue of whether 5 U.S.C. §

8502(d) prevents this Court from exercising subject-matter

jurisdiction over this matter. Second, the Virgin Islands has

moved to remand this case because it presents a "wholly local,

civil matter." ECF No. 29, at 2. The Court will address each

issue in turn.

#### 1. Title 5, Section 8502

When a former federal employee seeks unemployment

compensation pursuant to federal statute, the agency responsible

for adjudicating and paying the claim differs depending on

whether the United States Secretary of Labor has entered into an

agreement with a state[1] to pay unemployment compensation to

federal employees as an agent of the United States. *Compare* 5

U.S.C. § 8502 (authorizing payment by a state where an agreement

exists)*, with* 5 U.S.C. § 8503 (authorizing payment by the United

States Secretary of Labor where there is no agreement). Title 5,

section 8502 addresses payment of unemployment compensation when

the Secretary of Labor and a state have entered into such an

agreement. That statute provides that:

> **(a)** The Secretary of Labor, on behalf of the
> United States, may enter into an agreement with a
> State, or with an agency administering the
> unemployment compensation law of a State, under
> which the State agency shall--
>
> **(1)** pay, as agent of the United States,
> compensation under this subchapter to Federal
> employees; and
>
> **(2)** otherwise cooperate with the Secretary and
> with other State agencies in paying compensation
> under this subchapter.
>
> **(b)** The agreement shall provide that compensation
> will be paid by the State to a Federal employee in
> the same amount, on the same terms, and subject to
> the same conditions as the compensation which
> would be payable to him under the unemployment
> compensation law of the State if his Federal
> service and Federal wages assigned under section
> 8504 of this title[2] to the State had been

---

[1] The term "state" currently includes the Virgin Islands. 5 U.S.C. § 8501(6).

[2] That section provides that:

> Under regulations prescribed by the Secretary of Labor, the
> Federal service and Federal wages of a Federal employee
> shall be assigned to the State in which he had his last
> official station in Federal service before the filing of his
> first claim for compensation for the benefit year. However—

included as employment and wages under that State law.

. . .

**(e)** Each agreement shall provide the terms and conditions on which it may be amended or terminated.

5 U.S.C. § 8502(a)-(b), (e). Significantly,

[a] determination by a State agency with respect to entitlement to compensation under an agreement is subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law, and only in that manner and to that extent.

5 U.S.C. § 8502(d).

In *International Union, United Automobile, Aerospace & Agricultural Implement Workers of America v. Brock*, the United States Supreme Court interpreted a substantially similar provision in an analogous section of the Trade Act of 1974.

The Trade Act of 1974 established a program of trade readjustment allowance (TRA) benefits as a supplement to state unemployment insurance benefits. 19 U.S.C. § 2291. Under the Act's

---

**(1)** if, at the time of filing his first claim, he resides in another State in which he performed, after the termination of his Federal service, service covered under the unemployment compensation law of the other State, his Federal service and Federal wages shall be assigned to the other State; and

**(2)** if his last official station in Federal service, before filing his first claim, was outside the United States, his Federal service and Federal wages shall be assigned to the State where he resides at the time he files his first claim.

5 U.S.C. § 8504.

scheme, a group of workers, their union, or some
other authorized representative may petition the
Secretary of Labor to certify that their firm has
been adversely affected by imports. §§ 2271–2273.
If the Secretary issues a certificate of
eligibility for such a group, workers within that
group who meet certain standards of individual
eligibility may then apply for and receive TRA
benefits. These benefits are funded entirely by
the Federal Government, as is the cost of
administering the program.

While the Secretary of Labor cannot delegate his
certification duties, the Act does permit him to
contract out the job of making individual
eligibility determinations to the state agencies
that administer state unemployment insurance
programs. The Secretary has in fact entered into
such agreements with unemployment insurance
agencies in each State and in the District of
Columbia and Puerto Rico. Pursuant to the
agreements, each of these "cooperating Stat[e]
agencies," § 2311(a), becomes an "agent of the
United States," § 2313(a), charged with processing
applications and using federal funds to pay TRA
benefits to individuals eligible under the Act.
Review of eligibility decisions by these agencies
is to be *"in the same manner and to the same extent
as determinations under the applicable State law
and only in that manner and to that extent."* §
2311(d).

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of
Am. v. Brock*, 477 U.S. 274, 277–78, 106 S. Ct. 2523, 2526, 91 L.
Ed. 2d 228 (1986) (emphasis added). In that case, the Court held
that Congress, by providing that determinations by state
agencies were to be reviewed in "the same manner and to the same
extent as determinations under the applicable State law and only
in that manner and to that extent," had "vest[ed] state courts

with exclusive jurisdiction over claims challenging a state

agency's application of federal guidelines to the benefit claims

of individual employees." *Id.* at 285. It also held that that

provision does not "deprive federal district courts of subject-

matter jurisdiction . . . to hear statutory or constitutional

challenges to the federal guidelines themselves." *Id.* It follows

that if the Secretary of Labor and a state have reached an

agreement as described in 5 U.S.C. § 8502, state courts have

exclusive jurisdiction over the application of the law to an

individual's claim when that individual does not claim that the

law itself is invalid.

If, however, the Secretary of Labor and the state have not

entered into an agreement pursuant to 5 U.S.C. § 8502, then

payment of unemployment compensation for federal employees is

governed by 5 U.S.C. § 8503. That statute provides that:

> the Secretary [of Labor], under regulations
> prescribed by him, shall, on the filing by the
> Federal employee of a claim for compensation under
> this subsection, pay compensation to him in the
> same amount, on the same terms, and subject to the
> same conditions as would be paid to him under the
> unemployment compensation law of the State if his
> Federal service and Federal wages had been
> included as employment and wages under that State
> law. However, if the Federal employee, without
> regard to his Federal service and Federal wages,
> has employment or wages sufficient to qualify for
> compensation during the benefit year under that
> State law, then payments of compensation under

> this subsection may be made only on the basis of
> his Federal service and Federal wages.

5 U.S.C. § 8503(a). Furthermore,

> A Federal employee whose claim for compensation
> under subsection (a) of this section is denied is
> entitled to a fair hearing under regulations
> prescribed by the Secretary. A final determination
> by the Secretary with respect to entitlement to
> compensation under this section is subject to
> review by the courts in the same manner and to the
> same extent as is provided by section 405(g) of
> title                                           42.

5 U.S.C. § 8503(a).

Here, the United States and the Virgin Islands Department of Labor contend that an agreement made in accordance with 5 U.S.C. § 8502 exists. In support of that contention, the United States directs the Court to: (1) a 1954 agreement between the Governor of the Virgin Islands and the United States Secretary of Labor; and (2) a 1958 amendment to that agreement.

The 1954 agreement--which indicated that it was entered into to "carry out the provisions of title XV of the Social Security Act as amended, (P.L. 767, 83d Congress)"-- contains several provisions that are pertinent to the Court's inquiry:

> I. The Governor [of the Virgin islands], or under
> his direction and supervision such individuals of
> the Virgin Islands Employment Service as he may
> designate, shall, as agent of the United States,
> make determinations of entitlement to compensation
> under title XV for individuals in the Virgin
> Islands in accordance with regulations prescribed
> by the Secretary.

> II. The Governor [of the Virgin islands] will
> authorize payment by the Commissioner of labor of
> Puerto Rico of compensation under title XV to
> individuals entitled thereto in the same amounts,
> on the same terms, and subject to the same
> conditions as compensation which would be payable
> to such individuals under the District of Columbia
> Unemployment Compensation Act if such individuals'
> Federal service and Federal wages had been
> included as employment and wages under such law,
> with . . . [certain exceptions not applicable here
> ].
>
> III. The Governor [of the Virgin islands] will
> determine entitlement to compensation under title
> XV with respect to individuals in the Virgin
> islands and in accordance with the District of
> Columbia Unemployment Compensation Act, insofar as
> such Act is applicable. Such determinations . . .
> [are subject to limited review].

ECF No. 39-1, at 3-4. The 1958 amendment to the 1954 agreement

gave effect to the Ex-Servicemen's Unemployment Compensation Act

of 1958. The amendment does not materially alter the relevant

provisions of the 1954 agreement. *See id.* at 9-12.

Title XV of the Social Security Act as amended, P.L. 83-

767, provided that:

> (b) In the case of a Federal employee whose Federal
> service and Federal wages are assigned under
> section 1504 to Puerto Rico or the Virgin Islands,
> the Secretary, in accordance with regulations
> prescribed by him, shall, upon the filing by such
> employee of a claim for compensation under this
> subsection, make payments of compensation to him
> with respect to unemployment after December 31,
> 1954, in the same amounts, on the same terms, and
> subject to the same conditions as would be paid to
> him under the unemployment compensation law of the

District of Columbia if such employee's Federal service and Federal wages had been included as employment and wages under such law, except that if such employee, without regard to his Federal service and Federal wages, has employment or wages sufficient to qualify for any compensation during the benefit year under such law, then payments of compensation under this subsection shall be made only on the basis of his Federal service and Federal wages.

. . .

(d) The Secretary may utilize for the purposes of this section the personnel and facilities of the agencies in Puerto Rico and the Virgin Islands cooperating with the United States Employment Service under the Act of June 6, 1933 (48 Stat. 113), as amended, and may delegate to officials of such agencies any authority granted to him by this section whenever the Secretary determines such delegation to be necessary in carrying out the purposes of this title. For the purpose of payments made to such agencies under such Act, the furnishing of such personnel and facilities shall be deemed to be a pave of the administration of the public employment offices of such agencies.

Act on September 1, 1954, P.L. 83-767, 68 Stat. 1132-33. Despite

several amendments--which codified the unemployment scheme in

Title 5 of the United States Code and addressed changes to the

statutory scheme in Puerto Rico (to which the provisions above

did not apply for unemployment beginning after January 1, 1966),

*see* Act on September 6, 1966, P.L. 89-554, 80 Stat. 587; Act on

September 11, 1967, P.L. 90-83, 81 Stat. 218--the statutory

unemployment scheme for federal civilian employees in the Virgin

Islands remained materially unchanged until 1976. *See* Act of
October 20, 1976, 90 Stat. 266.

In 1976, Congress repealed the provisions quoted above, as
amended, and amended the definition of the term "state" in 5
U.S.C. § 8501 to include the Virgin Islands. That change, in
effect, made 5 U.S.C. § 8502 and 5 U.S.C. § 8503 applicable to
the Virgin Islands in the same manner that those provisions
apply to the states. *See id.*

The United States argues that the 1954 agreement complies
with the requirements of 5 U.S.C. § 8502 because: (1) the
agreement (a) authorizes the Governor of the Virgin islands to
serve as an agent of the United States and make determinations
of entitlement to compensation in accordance with regulations
prescribed by the United States Secretary of Labor, and (b) the
United States Secretary of Labor has issued a regulation
requiring that the compensation that is to be paid be determined
under State law, *see* 20 C.F.R. § 609.4; and (2) the agreement
provides that (a) the Governor will determine entitlement to
compensation under title XV with respect to individuals in the
Virgin islands and in accordance with the District of Columbia
Unemployment Compensation Act, insofar as such Act is
applicable, and (b) the District of Columbia Unemployment Act is

now inapplicable after the 1976 amendments to 5 U.S.C. § 8501

and 5 U.S.C. § 8503.[3]

Significantly, the provisions referenced by the United

States are provisions regarding *determination of entitlement to

compensation*, not *payment*. Title 8502, Section 5 provides that:

> The agreement shall provide that *compensation will
> be paid* by the State to a Federal employee in the
> same amount, on the same terms, and subject to the
> same conditions as the compensation which would be
> payable to him under the unemployment compensation
> law of the State if his Federal service and Federal
> wages assigned under section 8504 of this title to
> the State had been included as employment and
> wages under that State law.

5 U.S.C. § 8502(b). Thus, the United States's argument lacks

force unless *payment of compensation* is part and parcel of the

*determination of entitlement to compensation*.

The structure of the 1954 agreement--which contains a

provision that addresses payment which is separate from the

several provisions that address determination of entitlement to

compensation--undermines the United States's argument. As

previously noted, that provision (the "payment provision")

---

[3] The Virgin Islands also directs the Court to a document titled "UCFE
Instructions for Federal Agencies," which was published by the United States
Department of Labor. ECF No. 47-1. That document indicates that an agreement
made in accordance with 5 U.S.C. § 8502 exists between the United States and
the Virgin Islands. *See id.* at 12. Significantly, that document is not itself
such an agreement. Moreover, it provides no reasoned analysis addressing
whether the 1954 agreement satisfies the requirements specified in 5 U.S.C. §
8502.

provides that after the Virgin Islands determines entitlement to

compensation:

> [t]he Governor [of the Virgin Islands] will
> authorize payment by the Commissioner of labor of
> Puerto Rico of compensation under title XV to
> individuals entitled thereto in the same amounts,
> on the same terms, and subject to the same
> conditions as compensation which would be payable
> to such individuals under the District of Columbia
> Unemployment Compensation Act . . . .

ECF No. 39-1, at 3. Thus, under the 1954 agreement, the

Government of the Virgin Islands is responsible for determining

entitlement to compensation and then, after receiving

authorization, the Commissioner of Labor of Puerto Rico is

responsible for making payments in accordance with that

determination. As such, the drafters of the 1954 agreement

cannot have intended for provisions addressing the determination

of entitlement to benefits to encompass payment of compensation.[4]

---

[4] That separation of functions was not a stenographer's error. Indeed, it is
preserved in the 1958 amendment. *See* ECF No. 39-1, at 9-12. Moreover, in
1961, the Secretary of Labor issued regulations which similarly separated the
responsibility for determining entitlement to compensation and the
responsibility for paying compensation. Those regulations provided that:

> Where a Federal civilian employee['] s Federal civilian wages
> have been assigned to Puerto Rico or the Virgin Islands[,]
> the agency of Puerto Rico or the Virgin Islands, as the case
> may be[,] shall promptly determine the claimant['] s
> entitlement to compensation . . . ."

20 C.F.R. 611.5(a)(1) (1961). Significantly, those regulations also provided
that:

> A copy of the *determinations made by the Virgin Islands*
> *agency* shall be transmitted together with an authorization
> for payment to the Puerto Rico agency. The *Puerto Rico agency*

Therefore, the only provision that addresses payment is the payment provision.

The payment provision provides that the Commissioner of Labor of Puerto Rico will make payments, when authorized, "in the same amounts, on the same terms, and subject to the same conditions as compensation which would be payable to such individuals under the District of Columbia Unemployment Compensation Act . . . ." *Id.* The District of Columbia Unemployment Compensation Act and the Virgin Islands Unemployment Compensation Act are not identical. *Compare* D.C. Code Ann. § 51-101, *et. seq.*, *with* 24 V.I.C. § 302, *et. seq.* As such, the 1954 agreement is not consistent with 5 U.S.C. § 8502, which requires than an agreement between the United States Secretary of Labor and the Virgin Islands provide that a Virgin Islands agency will "pay, as agent of the United States . . . compensation . . . to a Federal employee in the same amount, on the same terms, and subject to the same conditions as the compensation which would be payable to him under the unemployment compensation law of the State." *See* 5 U.S.C. § 8502(a)-(b). As such, on its face, the 1954 agreement, as

---

*shall make payments* to individuals entitled to compensation under this part.

20 C.F.R. 611.5(b) (1961) (emphasis added).

amended by the 1958 amendment, is not an agreement that complies

with the requirements of 5 U.S.C. § 8502.[5]

Nevertheless, the Virgin Islands and the United States

contend that the 1954 agreement--which provides for amendment by

mutual consent, ECF No. 39-1, at 5--has been amended by the

United States and the Virgin Islands's course of conduct,

including the issuance of regulations and policies that conform

to the requirements of 5 U.S.C. § 8502, the payment of benefits

to former federal employees, and a yearly grant agreement

between the Virgin islands and the United States that generally

addresses the provision of funds for federal unemployment

benefits.[6] As such, they contend that no written agreement that

satisfies 5 U.S.C. § 8502 is required.

In general, a contract may be formed based on conduct. *See*

Restatement (Second) of Contracts § 4 ("A promise may be stated

in words either oral or written, or may be inferred wholly or

---

[5] The Virgin Islands speculates that because the 1954 agreement provided that
" [t]he Governor will determine entitlement to compensation . . .  and in
accordance with the District of Columbia Unemployment Compensation Act,
*insofar as such Act is applicable*," ECF No. 39-1 (emphasis added), at 3-4,
that agreement must have anticipated the extension of 5 U.S.C. § 8502 to the
Virgin Islands. The Virgin Islands provides no evidentiary support for that
assertion.
    Regardless, because that provision addresses entitlement to
compensation, rather than payment of compensation, the Court need not reach
this issue.
[6] The parties have not argued that the yearly grant agreement could, itself,
be an agreement made in accordance with 5 U.S.C. § 8502. After reviewing that
agreement, the Court is satisfied that that agreement is not an agreement
that satisfies the requirements of 5 U.S.C. § 8502.

partly from conduct."). In addition, when interpreting the terms

of a contract, the conduct of the parties is evidence of intent

and "[w]here it is unreasonable to interpret the contract in

accordance with the course of performance, the conduct of the

parties may be evidence of an agreed modification or of a waiver

by one party." Restatement (Second) of Contracts § 202, cmt. g.

Significantly, neither the Virgin Islands nor the United

States have identified any case in which a court has found that

an agreement under 5 U.S.C. § 8502--or under a similar provision

of federal law--was formed based on a course of conduct.[7] With

respect to several federal statutes which require agreements

with the Secretary of an executive department, federal

regulations expressly provide that the agreement must be in

writing. *See, e.g.,* 20 U.S.C. § 1094(a) (requiring institute of

higher education to enter into program participation agreements

with the Secretary of Education that satisfy certain

requirements); 34 C.F.R. § 668.14 ("An institution may

participate in any Title IV, HEA program, other than the LEAP

and NEISP programs, only if the institution enters into a

written program participation agreement with the Secretary, on a

form approved by the Secretary[.]"); 16 U.S.C. § 4103(c)(3)(B)

---

[7] The Court has also been unable to locate any case law specifically addressing the issue.

("For any fiscal year after fiscal year 1988, no State may receive an apportionment under this section for any fiscal year if that State's ratio under the apportionment formula in subsection (b) is less than one-third of one percent, unless the State--has entered into an agreement with the Secretary or the Secretary of the Interior . . . [regarding] enforcement of Federal and State laws pertaining to the protection of fishery resources which are managed under an interstate fishery management plan[.]"); 50 C.F.R. § 253.50 ("Enforcement agreement means a written agreement, signed and dated, between a state agency and either the Secretary of the Interior or Secretary of Commerce, or both, to enforce Federal and state laws pertaining to the protection of interjurisdictional fishery resources.").

Indeed, even where no such regulation exists, courts have stated in *dicta* that formal agreements are required. *See, e.g., Johns v. Stewart*, 57 F.3d 1544, 1549 n.7 (10th Cir. 1995) (stating that 42 U.S.C. § 1383(g)(4)--which requires a reimbursement agreement between a State and the Commissioner of Social Security that satisfies certain conditions--requires entry into a "formal reimbursement agreement"); *Rivers by Rivers v. Schweiker*, 692 F.2d 871, 872 (2d Cir. 1982)(same).

Having considered the limited authority relevant to this issue, the Court is satisfied that a written agreement is

contemplated by 5 U.S.C. § 8502. Title 5, Section 8502 requires

that that agreement "provide the terms and conditions on which

it may be amended or terminated." 5 U.S.C. § 8502(e). It would

be difficult, if not impossible, to include a termination

provision in an implied-in-fact contract. Therefore, it appears

that no agreement could be formed by conduct.

It also appears that a pre-existing agreement cannot be

amended by conduct. The United States Secretary of Labor has

issued a regulation which provides that:

> The State agency of a State will make available to
> any individual or organization a true copy of the
> [5 U.S.C. § 8502] Agreement with the State for
> inspection and copying. Copies of an Agreement may
> be furnished on request to any individual or
> organization upon payment of the same charges, if
> any, as apply to the furnishing of copies of other
> records of the State agency.[8]

20 C.F.R. § 609.15; *see also* 20 C.F.R. § 609.2(a)-(b) ("(a) Act

means subchapter I of chapter 85, title 5, United States Code, 5

U.S.C. 8501–8508. (b) Agreement means the agreement entered into

pursuant to the Act between a State and the Secretary under

which the State agency of the State agrees to make payments of

unemployment compensation in accordance with the Act and the

regulations and procedures thereunder prescribed by the

Department."). If an agreement were amended by conduct or

---

[8] "The Secretary of Labor may prescribe rules and regulations necessary to carry out" 5 U.S.C. § 8501, *et. seq. See* 5 U.S.C. § 8508.

orally, then a true copy of that agreement could not be made available. As such, 20 C.F.R. § 609.15 at least implies that any agreement between a state and the United States Secretary of Labor must be in writing.[9]

As such, for the reasons stated above, the Court concludes that 5 U.S.C. § 8502 and accompanying regulations require a written agreement between the Virgin Islands and the United States Secretary of Labor that satisfies the conditions specified in 5 U.S.C. § 8502. Because no such agreement exists, 5 U.S.C. § 8502(d) does not deprive the Court of subject-matter jurisdiction.[10]

---

[9] Gilbert's affidavit indicates that the agreement made in accordance with 5 U.S.C. § 8502 between the Virgin Islands Department of Labor and the United States Secretary of Labor, is the written 1954 agreement, and that the only amendment to that agreement was the written 1958 amendment. At the time when Gilbert's affidavit was submitted to the Court, the Court had not expressed its concerns regarding the 1954 agreement and the parties had not asserted that an agreement made in accordance with 5 U.S.C. § 8502 could be formed by conduct. Nevertheless, the Court notes that Gilbert, an administrator in the United States Department of Labor, only referenced written agreements when he indicated that an agreement made in accordance with 5 U.S.C. § 8502 existed between the Virgin Islands Department of Labor and the United States Secretary of Labor.

[10] Because no agreement exists that satisfies the requirements of 5 U.S.C. § 8502, in order to receive federal unemployment compensation, Gillead must seek a determination that she is entitled to benefits and payment from the United States Secretary of Labor. *See* 5 U.S.C. § 8503(a). She may appeal from that determination to this Court. *See* 5 U.S.C. § 8503(b)("A final determination by the Secretary with respect to entitlement to compensation under this section is subject to review by the courts in the same manner and to the same extent as is provided by section 405(g) of title 42."); 42 U.S.C. § 405(g).

The Court will not, however, dismiss this matter as barred by 5 U.S.C. § 8503. Even in the absence of an agreement made in accordance with 5 U.S.C. § 8502, Gillead is not prevented from seeking unemployment compensation from the Virgin Islands Department of Labor pursuant to Virgin Islands statute and seeking judicial review of the agency determination (although she may be ineligible to receive such benefits as a former federal employee).

### 2. Motion to Remand for Lack of Subject-Matter Jurisdiction

The Virgin Islands Department of Labor also asserts that the Court may not exercise subject matter jurisdiction over a removed petition for review of the Virgin Islands Department of Labor's denial of unemployment benefits because such a matter is a wholly local, civil matter.

Title 28, Section 1442(a)(1) authorizes the United States and its agencies to remove to federal court actions "against or directed to" the United States or its agencies. In Gillead's petition for review, the TSA--an agency of the United States--is named as a respondent. A petition for review of a state administrative proceeding is a removable action. *See, e.g., City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164, 118 S. Ct. 523, 529, 139 L. Ed. 2d 525 (1997). As such, the Court may exercise jurisdiction over this removed action.

Accordingly, the Court will deny the Virgin Islands's motion.

### B. Motion to Dismiss for Failure to State a Claim and For Failure to Prosecute

The United States contends that it should be dismissed from this action on the basis that: (1) the petition fails to state a claim against the United States because "all of the allegations in the complaint are against the [Virgin Islands] Department of

Labor," rather than the United states, *see* ECF No. 4, at 2; and

(2) Gillead has failed to prosecute this action.

### 1. Failure to State a Claim

As previously noted, in the absence of an agreement made in

accordance with 5 U.S.C. § 8502, the unemployment benefits

potentially available to Gillead pursuant to federal statute

cannot be addressed in this action. *See infra* note 8. In this

action, the Court may only review the Virgin Island Department

of Labor's determination of entitlement to benefits pursuant to

the relevant Virgin Islands statutes.[11] *See id.*

Virgin Islands law provides for a petition for review from

the decision of the hearing examiner. 24 V.I.C. § 306(e)(1). It

further requires that "[a]ll parties to the proceeding before

the hearing examiner shall be parties to the review

proceedings." 24 V.I.C. § 306(e)(2). The hearing examiner's

decision, which was attached to Gillead's petition for review,

is captioned *Laura Gillead v. Transportation Security

Administration*. The hearing examiner's decision indicates that

the TSA appeared through its Assistant Federal Security Director

---

[11] That difference is significant because a former employee of a United States agency seeking benefits under only the relevant Virgin Islands statutes would be required to show that the United States agency is an employer covered by Virgin Islands law. *See* 24 V.I.C. § 303(a) (providing that to qualify as an "insured worker," that worker must have been paid at least a certain sum for "insured work"); 24 V.I.C. § 302(p)(providing that "insured work" is "work for any employer as defined in section 302(i) of this title").

for Mission Support. As such the United States is a necessary

party to this action under Virgin Islands law.

Accordingly, the Court will deny the United States's

motion insofar as it seeks to be dismissed from this action on

the basis that no allegations were asserted against it.

## 2. Failure to Prosecute

The United States also seeks to dismiss this case for

failure to prosecute.

When a plaintiff fails to prosecute a matter in this Court,

the Court may dismiss the action. *See Reshard v. Lankenau Hosp.*,

256 F. App'x 506, 507 (3d Cir. 2007).

> When considering whether to dismiss a case for
> failure to prosecute, courts generally should
> consider the factors set forth in *Poulis v. State
> Farm Fire and Casualty Co.,* 747 F.2d 863, 868 (3d
> Cir.1984):
>
> > (1) the extent of the *party's* personal
> > *responsibility;* (2) the *prejudice* to the
> > adversary caused by the failure to meet
> > scheduling orders and respond to
> > discovery; (3) a *history* of dilatoriness;
> > (4) whether the conduct of the party or
> > the attorney was *willful* or in *bad faith;*
> > (5) the effectiveness of sanctions other
> > than dismissal, which entails an analysis
> > of *alternative sanctions*; and (6) the
> > *meritoriousness* of the claim or defense.

*Id.* at 507-08 (emphasis in original).

After the United States removed this case, there was a long

period of inactivity in this case. Specifically, 19 months

elapsed between removal and the United States's motion to dismiss, with no intervening activity. At the same time, the Court had not issued a trial management order or any other order which would have placed Gillead under any affirmative duty to act. Moreover, Gillead has subsequently retained an attorney who is timely responding to the Court's orders. Under these circumstances, the Court finds that dismissal for failure to prosecute is not appropriate.

The premises considered, it is hereby

**ORDERED** that the motion to remand this matter for lack of subject matter jurisdiction is **DENIED**; and it is further

**ORDERED** that the motion to dismiss for failure to state a claim and for failure to prosecute is **DENIED.**

S\_____
          **Curtis V. Gómez**
          **District Judge**