```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

LAURA GILLEAD,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )    Civil No. 15-48
                                  )
UNITED STATES OF AMERICA          )
(TRANSPORTATION SECURITY          )
ADMINISTRATION); VIRGIN ISLANDS   )
DEPARTMENT OF LABOR;              )
                                  )
          Defendants.             )
                                  )
```

**APPEARANCES:**

**Pedro Williams, Esq.**
Law Office of Pedro K. Williams
St. Thomas, VI
    *For Laura Gillead*,

**Gretchen Shappert, United States Attorney**
**Joycelyn Hewlett, AUSA**
**Sansara Adella Cannon, AUSA**
United States Attorney's Office
St. Thomas, VI
    *For the United States of America (Transportation Security*
    *Administration),*

**Carol Thomas-Jacobs, AG**
**Su-Layne Walker, AAG**
Virgin Islands Department of Justice
St. Thomas, VI
    *For the Virgin Islands Department of Labor.*

## **ORDER**

**GÓMEZ, J.**

Before the Court is the Virgin Islands's motion to reconsider the Court's August 18, 2018, order denying the Virgin

Islands's motion to remand and motion to dismiss for failure to state a claim and for failure to prosecute.

### I.    FACTUAL AND PROCEDURAL HISTORY

On September 15, 2002, the Transportation Security Agency (the "TSA" or the "United States"), a federal agency, hired Laura Gillead ("Gillead") as a transportation security officer. She was stationed at Cyril E. King Airport in St. Thomas, U.S. Virgin Islands. On December 1, 2014, Gillead's position with the TSA was terminated due to alleged insubordination and misbehavior in front of passengers.

On December 7, 2014, Gillead filed a claim for unemployment benefits. On February 17, 2015, an adjudicator determined that Gillead was disqualified from receiving benefits under the Virgin Islands Employment Security Law.

Gillead appealed that determination to an administrative law judge in the Virgin Islands Employment Security Agency. The administrative law judge held a hearing on Gillead's appeal on March 17, 2015. Gillead and a TSA representative appeared at that hearing. In a March 20, 2015, opinion, the administrative law judge affirmed the denial of benefits.

On April 20, 2015, Gillead filed a "Petition for Writ of Review" in the Superior Court of the Virgin Islands. In that petition, Gillead named the Virgin Islands Department of Labor

(the "Virgin Islands") and the TSA as respondents. In her petition, Gillead contends that she did not engage in misconduct; that the administrative law judge's conclusions were not supported by substantial evidence; that the administrative law judge exceeded his authority; and that she was denied due process during the underlying proceedings. As a remedy, Gillead seeks "a writ of review . . . ordering unemployment benefits, . . . [pending the outcome] of this proceeding and such other relief this court deems reasonable, including waiver of posting bond." ECF No. 1-1 at 4.

On June 5, 2015, the United States removed the matter to this Court. On January 24, 2017, the United States then filed a motion to dismiss the claim against it for failure to state a claim and for failure to prosecute.

On March 26, 2018, the Virgin Islands filed a motion to remand this matter for lack of subject-matter jurisdiction.

On July 16, 2018, the Court ordered the parties to file briefs addressing: "(1) whether the Secretary of Labor and the U.S. Virgin Islands have entered into an agreement that satisfies the provisions of 5 U.S.C. § 8502; and (2) if such an agreement has been reached, whether the Court may exercise jurisdiction over this matter." ECF No. 30 at 8. The United States and the Virgin Islands filed responsive briefs,

indicating that such an agreement exists. Gillead asserted that no such agreement exists.

The United States subsequently provided two documents to the Court: a 1954 Agreement and a 1958 Amendment to that agreement. The United States also provided an affidavit from Gay Gilbert ("Gilbert"), the Administrator of the Office of Unemployment Insurance of the U.S. Department of Labor, Employment and Training Administration. In Gilbert's affidavit, he stated that: (1) the 1954 Agreement is an agreement made in accordance with 5 U.S.C. § 8502 between the Virgin Islands Department of Labor and the United States Secretary of Labor; (2) the only amendment to the 1954 Agreement is the 1958 Amendment; and (3) the 1954 Agreement, as amended, remains in effect. *See Affidavit of Gay Gilbert*, ECF No. 39-1, at 1-2.

On August 8, 2018, the Court held an evidentiary hearing to address the Court's subject matter jurisdiction over this case. Following that hearing, the Court ordered the parties to:

> file briefs, with citation to controlling authority, addressing: (1) what law, if any, supports the continued validity of the 1954 agreement docketed at ECF No. 39-1; (2) whether the United States Virgin Islands and the United States are permitted to, by their conduct, form a new agreement or amend the 1954 agreement in such a manner that there is an agreement between the United States Virgin Islands and the United States that satisfies the requirements of 5 U.S.C. § 8502 and any other relevant requirements; and (3) if an

>  agreement or amendment by conduct is permitted, what record evidence supports the conclusion that such an agreement has been reached or that such an amendment has occurred.

Aug. 8, 2018, Text Order at ECF No. 43. The parties have filed responsive briefs.

On August 18, 2018, the Court issued an order that denied the Virgin Islands's motion to remand and denied the Virgin Islands's motion to dismiss for failure to state a claim and for failure to prosecute. ECF No. 50.

The Virgin Islands now moves the Court to reconsider the August 18, 2018, order.

## II.  DISCUSSION

Local Rule of Civil Procedure 7.3 permits motions for reconsideration only when there is (1) an intervening change in controlling law; (2) new evidence available; or (3) a need to correct clear error or prevent manifest injustice. LRCi 7.3; *see also Max's Seafood Café by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration "shall be filed within fourteen (14) days after entry of the order or decision unless the time is extended by the Court." LRCi 7.3.

The purpose of a motion for reconsideration "is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). "Such motions are not substitutes for appeals, and are not to be used 'as a vehicle for registering disagreement with the court's initial decision, for rearguing matters already addressed by the court, or for raising arguments that could have been raised before but were not.'" *Cabrita Point Dev., Inc. v. Evans*, 52 V.I. 968, 975 (D.V.I. 2009) (quoting *Bostic v. AT & T of the V.I.*, 312 F. Supp. 2d 731, 733, 45 V.I. 553 (D.V.I. 2004)).

In the context of a motion to reconsider, "manifest injustice 'generally means that the Court overlooked some dispositive factual or legal matter that was presented to it.'" *Id.* (quoting *In re Rose*, No. 06-1818(JLP), 2007 U.S. Dist. LEXIS 64622, at *3 (D.N.J. Aug. 30, 2007)). Manifest injustice has also been defined as "'an error in the trial court that is direct, obvious, and observable.'" *Tenn. Prot. & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004) (quoting Black's Law Dictionary 974 (7th ed. 1999)). "[M]ost cases . . . use the term 'manifest injustice' to describe the result of plain error." *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1425 (5th Cir. 1996).

## III. ANALYSIS

In its motion for reconsideration, the Virgin Islands does not allege, nor could it, that there has been a change in controlling law. The Virgin Islands also does not argue that the Court must correct a previous error or reconsider its decision to prevent manifest injustice. Rather, the Virgin Islands argues that the Court should reconsider its August 18, 2018, order in light of the 1973 Agreement. To succeed on such a claim, the moving party must demonstrate that the evidence was unavailable at the time the court made its initial decision. *See In re Energy Future Holdings Corp.*, 904 F.3d at 311 (citing *United States ex rel. Schumann v. AstraZeneca Pharms. L.P*, 769 F.3d 837, 848-49 (3d Cir. 2014)).

The scope of what a court review's when considering a motion for reconsideration "is extremely limited." *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). The Third Circuit has explained that "new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available. Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration." *Blystone v. Horn*, 664 F.3d 397, 415-16 (3d Cir. 2011)(citations omitted).

The Virgin Islands does not argue that the "newly discovered" 1973 Agreement was unavailable when the Court made its initial ruling. Rather, the Virgin Islands asserts, through the affidavit of Gay Gilbert, that the Virgin Islands simply could not find the 1973 Agreement before the Court made its ruling on August 18, 2018. According to Gilbert, the 1973 Agreement was located six days after the Court's order.

The failure of the Virgin Islands to locate a document in its custody, which the Virgin Islands regards as relevant, does not transform the late disclosed document into newly discovered evidence. To find otherwise would be to turn the failure to exercise due diligence into a virtuous inconvenience. In sum, 1973 Agreement is not newly discovered evidence.

Even if the Court were inclined to treat the 1973 Agreement as newly discovered evidence, the outcome would be unchanged. Previously, the parties provided the Court with the 1954 Agreement and all modifications to that agreement. The United States and the Virgin Islands argued that the 1954 Agreement complied with the requirements of 5 U.S.C. § 8502 ("Section 8502"). To the extent that the 1954 Agreement complied with the

provisions of Section 8502 (a) and (b), Section 8502(d)[1] would deprive the Court of jurisdiction. The Court was not persuaded.

Section 8502 (a) provides, in pertinent part,

> The Secretary of Labor, on behalf of the United States, may enter into an agreement with a State, or with an agency administering the unemployment compensation law of a State, under which the State agency shall--
> (1) pay, as agent of the United States, compensation under this subchapter [5 USCS §§ 8501 et seq.] to Federal employees; and
> (2) otherwise cooperate with the Secretary and with other State agencies in paying compensation under this subchapter . . . .

The Court reasoned that Section 8502, and accompanying regulations, require a written agreement between the Virgin Islands and the United States Secretary of Labor in which payment of compensation is part of the determination of entitlement to compensation. The Court explained:

> Significantly, the provisions referenced by the United States are provisions regarding *determination of entitlement to compensation*, not *payment*. . . .
> Thus, the United States's argument lacks force unless *payment of compensation* is part and parcel of the *determination of entitlement to compensation*. . . .
> [U]nder the 1954 agreement, the Government of the Virgin Islands is responsible for determining entitlement to compensation and then, after receiving authorization, the Commissioner of Labor of Puerto Rico is responsible for making payments

---

[1] Section 8502(d) provides: "A determination by a State agency with respect to entitlement to compensation under an agreement is subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law, and only in that manner and to that extent."

>in accordance with that determination. As such, the drafters of the 1954 agreement cannot have intended for provisions addressing the determination of entitlement to benefits to encompass payment of compensation. Therefore, the only provision that addresses payment is the payment provision.
>The payment provision provides that the Commissioner of Labor of Puerto Rico will make payments, when authorized, "in the same amounts, on the same terms, and subject to the same conditions as compensation which would be payable to such individuals under the District of Columbia Unemployment Compensation Act . . . ." *Id.* The District of Columbia Unemployment Compensation Act and the Virgin Islands Unemployment Compensation Act are not identical. *Compare* D.C. Code Ann. § 51-101, *et. seq.*, *with* 24 V.I.C. § 302, *et. seq.* As such, the 1954 agreement is not consistent with 5 U.S.C. § 8502, which requires that an agreement between the United States Secretary of Labor and the Virgin Islands provide that a Virgin Islands agency will "pay, as agent of the United States . . . compensation . . . to a Federal employee in the same amount, on the same terms, and subject to the same conditions as the compensation which would be payable to him under the unemployment compensation law of the State." *See* 5 U.S.C. § 8502(a)-(b). As such, on its face, the 1954 agreement, as amended by the 1958 amendment, is not an agreement that complies with the requirements of 5 U.S.C. § 8502.

ECF No. 50 (emphasis in original; footnotes omitted).

Now, the Virgin Islands offers the 1973 Agreement in support of its claim that Section 8502 deprives the Court of jurisdiction.

The 1973 Agreement provides, in pertinent part, "The Agency will act as an agent of the United States for the purpose of *making payments* under the UCFE-UCX programs and will cooperate

with the secretary and employment security agencies of other States in making such payments." ECF No. 51-1 at 1 (emphasis added).[2] Thus, the 1973 Agreement references payment of compensation. The Virgin Islands argues that the reference to payment of compensation in the 1973 Agreement complies with the requirements in Section 8502. Significantly, any agreement must comply with *both* provisions of Section 8502. Under 5 U.S.C. §8502 (b):

> The agreement shall provide that compensation will be paid by the State to a Federal employee in the same amount, on the same terms, and subject to the same conditions as the compensation which would be payable to him under the unemployment compensation law of the State if his Federal service and Federal wages assigned under section 8504 of this title to the State had been included as employment and wages under that State law.

The 1973 Agreement contains no language regarding the determination of entitlement. To comply with both provision of Section 8502, the determination of entitlement must be addressed in the agreement. While the 1973 Agreement arguably complies with Section 8502 (a), it does not comply with Section 8502 (b).

---

[2] By its own language, the 1973 Agreement "supersedes all prior agreements relating to the UCFE-UCX benefits executed by the parties or their predecessors." ECF No. 51-1 at 3. When determining the meaning of a contract, "the initial resort should be to the four corners of the agreement itself." *American Flint Glass Workers Union v. Beaumont Glass Co.*, 62 F.3d 574, 581 (3d Cir. 1995) (quotation marks and citation omitted). In this case, the plain language of the agreement makes clear that the 1973 Agreement supersedes the 1954 Agreement. Thus, the Court will not read those two agreement together, but will only consider the 1973 Agreement.

Thus, no agreement exists between the Virgin Islands and the United States Secretary of Labor that satisfies both of the conditions specified in Section 8502. Because no such agreement exists, Section 8502 does not deprive the Court of jurisdiction.

The premises considered, it is hereby

**ORDERED** that the Virgin Island's motion to reconsider docketed at ECF Number 51 is **DENIED**.

S\_____
**Curtis V. Gómez**
**District Judge**